83BMCASC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4                v.                          S1 04 Cr. 664 (TPG)

5   CESAR CASTRO,

6                Defendant.

7   ------------------------------x

8                                            New York, N.Y.
                                             March 11, 2008
9                                            2:40 p.m.

10
    Before:
11
                    HON. THOMAS P. GRIESA,
12
                                             District Judge
13

14                         APPEARANCES

15  MICHAEL J. GARCIA
         United States Attorney for the
16       Southern District of New York
    LOYAAN EGAL
17       Assistant United States Attorney

18  DON BUCHWALD
         Attorney for Defendant
19

20

21
    ALSO PRESENT:   SMYLA JONES, Probation
22                  GEOFFREY STEELE, Probation
                    MIRTA HESS, Spanish Interpreter
23

24

25

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

```
83BMCASC
```

 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x
 3  UNITED STATES OF AMERICA,
 4           v.                              S1 04 Cr. 664 (TPG)
 5  CESAR CASTRO,
 6                   Defendant.
 7  ------------------------------x

 8                                           New York, N.Y.
                                             March 11, 2008
 9                                           2:40 p.m.

10  Before:
11                   HON. THOMAS P. GRIESA,
12                                           District Judge
13
14                        APPEARANCES
15  MICHAEL J. GARCIA
         United States Attorney for the
16       Southern District of New York
    LOYAAN EGAL
17       Assistant United States Attorney
18  DON BUCHWALD
         Attorney for Defendant
19
20
21
    ALSO PRESENT:   SMYLA JONES, Probation
22                  GEOFFREY STEELE, Probation
                    MIRTA HESS, Spanish Interpreter
23
24
25

                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

83BMCASC

1       (Case called)
2       THE COURT: Thank you for coming. Are you the CJA?
3       MR. BUCHWALD: I am today CJA attorney, your Honor and
4  your chambers called and asked if I could be of assistance with
5  respect to the issue of proceeding on the basis of the present
6  presentence report.
7       When the interview of Mr. Castro by the probation
8  department was conducted outside of the defense attorney's
9  presence, my understanding from the probation officers are that
10 they have not been able to reach Mr. Moran, who is Mr. Castro's
11 counsel of record, and the question was whether Mr. Castro
12 would be willing to proceed on the basis of the presentence
13 report as it is, and I have discussed that with him, your
14 Honor.
15      THE COURT: Thank you for coming. It's been a very
16 odd circumstance. We just can't seem to get Mr. Moran into
17 functioning. But can the assistant just summarize for the
18 record what has happened from your standpoint.
19      MR. EGAL: Yes, your Honor. Loyaan Egal on behalf of
20 the United States. At counsel's table is probation officer
21 Smyla Jones and supervisor Geoffrey Steele, your Honor, both
22 from the probation office.
23      As your Honor is aware, the last time we were before
24 your Honor with regards to this defendant, Mr. Moran was not
25 available, but I believe he called in by telephone and he sent

83BMCASC

1    a letter explaining that an interview was conducted by
2    probation outside of his presence and --
3              THE COURT:  Mr. Moran had sent a letter.
4              MR. EGAL:  Correct, Mr. Moran sent a letter.
5              THE COURT:  Complaining about that.
6              MR. EGAL:  Correct.  Then we had a conference where
7    Mr. Moran called in on the phone and he was by telephone
8    conference.  And the rest of us were present, meaning the
9    defendant, myself, your Honor.  And your Honor granted him his
10   request that probation conduct the interview while he was
11   present.  Again, probation has had problems since that
12   conference, your Honor, getting in contact with Mr. Moran or
13   not getting in contact but actually having Mr. Moran present
14   while an interview would be conducted.  I would like for
15   probation to put on the record for your Honor the instances
16   that they have had or the issues they have had gaining contact
17   with Mr. Moran.
18             THE COURT:  Please do.  That would be very helpful.
19             MS. JONES:  After your Honor ordered the defendant to
20   be reinterviewed with Mr. Moran present, Mr. Moran and I set an
21   interview date for February 14, 2008, which he cancelled the
22   night before, saying that he had a court appearance or
23   scheduling problem.  We subsequently made another attempt and
24   we scheduled an interview for February 26, 2008, which
25   Mr. Moran again cancelled the night before.  So we set a final

83BMCASC

1  interview date of March 3, 2008 -- I'm sorry -- March 4, 2008,
2  which Mr. Moran left a message the night before saying that he
3  was going to waive his right to be at the presentence
4  interview.  That's pretty much how it's been going.
5         MR. EGAL:  If I may just add, your Honor, I was told
6  that probation, the interviews prior to when Mr. Moran -- the
7  interviews that Mr. Moran was writing his letter about where
8  the interview was conducted with the defendant, from reading
9  the PSR as it's drafted, it appears that the probation officer
10 did not ask the defendant any questions about the offense.
11        THE COURT:  About the what?
12        MR. EGAL:  About the offense, the instant offense,
13 that whatever information has been put in the PSR goes to the
14 background of the defendant in the PSR.  I just wanted that to
15 be clear.
16        THE COURT:  What about the hearing or the conference
17 today?  Mr. Moran was notified.  Mr. Beale, make you can help
18 us out.
19        THE DEPUTY CLERK:  I telephoned Mr. Moran twice in
20 reference to today's conference and left messages advising him
21 of the day, the time, the nature of the conferences, asking him
22 to call back to confirm.  He never called back.
23        THE COURT:  And he's not here.
24        THE DEPUTY CLERK:  That is correct.
25        THE COURT:  It was scheduled for, I think, 11

83BMCASC

1  something this morning.
2              THE DEPUTY CLERK:  11:30.
3              THE COURT:  11:30.  And he did not come at 11:30,
4  right?
5              THE DEPUTY CLERK:  That is correct.
6              THE COURT:  We rescheduled it at 2:30 so we could have
7  the assistant of the CJA attorney, and that we are grateful to
8  Mr. Buchwald.
9              I think Mr. Moran is retained counsel.
10             MR. EGAL:  I believe that's correct, your Honor.
11             THE COURT:  Do you have any ideas, Mr. Buchwald?
12             MR. BUCHWALD:  I do, your Honor.  Let me say I've had
13 a chance to speak to Mr. Castro and there are a couple of
14 things we'd like to bring to your Honor's attention.
15             First, with respect to the particular issue today of
16 proceeding with the presentence report as is, I have discussed
17 with Mr. Castro the fact that the case involves a mandatory
18 minimum sentence of ten years, that the sentencing guidelines
19 calculation in the report is 121 months to 151 months, that the
20 probation department itself in the final presentence report has
21 recommended to your Honor the 121-month sentence.  That's at
22 the bottom of the guidelines and explained to him various
23 things pertaining to the federal sentencing process and further
24 discussed with him that there appears to be nothing in the
25 interview that pertains to the offense itself.

1    Under those circumstances, I believe that Mr. Castro
2    is prepared to confirm that there would be nothing served by an
3    additional interview. But that having been said, it is also
4    clear to me that Mr. Castro has had extraordinary difficulty,
5    as the Court has and the probation department has, in being
6    able to reach Mr. Moran and communicate with Mr. Moran; and,
7    among other things, that Mr. Castro himself has never received
8    a copy of the presentence report. It wasn't sent to him by
9    Mr. Moran or left with him or mailed to him.

10    And so we request the following, that a sentencing
11    date be set sufficiently down the line from now so that
12    Mr. Castro himself can read the presentence report and digest
13    it. He says he believes he would be able to read it, though
14    it's in English, although he has it and is able to do it slowly
15    on his own; that Mr. Castro has asked that his family be given
16    an opportunity to try to retain another lawyer whose name he
17    has provided to me, one Norman Trablush. He is hopeful that
18    his mother would be able to finance the retention of another
19    lawyer through a loan on her home.

20    And it would seem to me, if Mr. Castro is given the
21    opportunity in the first instance to try to retain another
22    lawyer and his sentencing is pushed back far enough so, A, he
23    has that opportunity and, B, he can review the presentence
24    report himself, that any prejudice would be obviated.
25    With respect to the specific issue here, I think he

83BMCASC

1  understands that his problem is a problem of the sentencing --
2  the mandatory minimum and the guidelines as opposed to what is
3  in the presentence report. The presentence report itself,
4  except insofar as it states the offense as viewed by the
5  government and as apparently set forth at the trial, is not
6  something that particularly impacts the sentence that the
7  probation department has recommended, recommended at the very
8  bottom of the guidelines and everybody being in the situation
9  of having a mandatory minimum.
10          We would request on his behalf that he be permitted to
11  retain a copy of the presentence report -- during the interim
12  we had made a Xerox -- if your Honor does authorize us to give
13  it to him so he does have it himself and so that he be given an
14  opportunity through his family to retain another attorney.
15          MR. EGAL: Yes, your Honor. I just want to say, the
16  government obviously has no objection to Mr. Castro finding an
17  attorney. The only concern the government puts forth for your
18  Honor to consider is that depending on how long it takes for
19  the defendant to determine if he will be able to retain an
20  attorney, whoever comes on this case, the government will be
21  asking for obstruction points based on what came when the
22  defendant took the stand, and I would assume whoever came on
23  this case and represented him for sentencing would want to go
24  through the trial transcript and see what it is that the
25  government's argument is as to why it's going to ask your Honor

```
83BMCASC
```

1   for obstruction based on the testimony.
2            THE COURT:  That would take it above the 120 months.
3            MR. EGAL:  Yes, your Honor.  I believe it's a
4   two-point enhancement for obstruction points in the guidelines,
5   so it would raise it as far as the guideline calculation a
6   couple of points.  But I would assume whoever came on the case
7   would want to read the trial transcript to see that.
8            THE COURT:  What do the two points do as far as time?
9            MR. EGAL:  Your Honor, it raises it to an offense
10  level of 34 with a criminal history of I.  Unfortunately, I do
11  not have the guidelines calculations.
12           THE COURT:  I have got the guidelines.
13           MR. BUCHWALD:  151 to 188, your Honor.
14           THE COURT:  What is the offense?
15           MR. EGAL:  The offense that he was convicted of, your
16  Honor?
17           THE COURT:  Right.
18           MR. EGAL:  It's 21 841(b)(1)(A), which is the
19  mandatory minimum of ten years.
20           THE COURT:  What is it, drugs?
21           MR. EGAL:  Yes, for heroin conspiracy, your Honor.
22           THE COURT:  What's the offense level now without the
23  enhancement?
24           MR. EGAL:  With acceptance of responsibility -- I'm
25  sorry.  There is no acceptance.  It's offense level 32,

83BMCASC

1   criminal history I.  Obviously, I misspoke.

2              THE COURT:  Obstruction of justice, what would that --

3              MR. EGAL:  That would be a two-level enhancement,
4   which would make it offense level 34, criminal history I.

5              THE COURT:  That makes a big difference.

6              MR. EGAL:  Yes, your Honor.

7              THE COURT:  The thing is, whatever issues there are,
8   there has to be proper representation of Mr. Castro in
9   connection with the sentence.  And certainly he has a right to
10  seek a new lawyer.

11             I don't like to criticize Mr. Moran in his absence,
12  but unless there is some explanation by him, he has been -- he
13  has not properly represented Mr. Castro in connection with the
14  sentence and the proceedings relating to that, so I would
15  adjourn the sentence.  What do you recommend as to --

16             MR. EGAL:  That's all I was saying, your Honor, as far
17  as the length because if Mr. Castro is not able to retain this
18  attorney that he's asking about, there are quality attorneys,
19  such as Mr. Buchwald, on the CJA panel that would do a more
20  than adequate job in representing him at sentencing.  So I'm
21  asking your Honor for a time frame.

22             MR. BUCHWALD:  Mr. Castro's understanding is that
23  Mr. Trablush is on trial.

24             THE COURT:  Mr. Who?

25             MR. BUCHWALD:  The proposed new attorney who his

83BMCASC

1    family is going to see is on trial and has promised to come to
2    see Mr. Castro as soon as that trial is completed.  Mr. Castro
3    believes that it's a relatively short trial but really doesn't
4    know specifically, and believes that a decision would be made
5    as soon as Mr. Trablush comes to see him and speaks to him,
6    which would be right after that trial is concluded.
7             THE COURT:  I'll take your recommendation.  If we have
8    to adjourn it, we can do that, but let's set some date and do
9    the best we can now.  What do you recommend?
10            MR. EGAL:  Your Honor, the government would recommend
11   a month, your Honor.
12            THE COURT:  It's Mr. Buchwald who made the
13   application.  Let's hear from him.
14            MR. BUCHWALD:  I would think that that would be a fair
15   time to adjourn it for one month.  I would think if a new
16   attorney comes in at that point, that attorney may ask for some
17   additional time.  Alternatively, if there is no new attorney,
18   your Honor would probably consider the appointment of the CJA
19   attorney at that point, but it seems to me that the one month
20   should be adequate to determine whether this new attorney will
21   be available and will actually come in.
22            THE COURT:  First things first.  We will adjourn it
23   for a month.  What's the date, Mr. Beale?
24            THE DEPUTY CLERK:  Thursday, April 17, at 4:30.
25            THE COURT:  Now, before we get into the question of a

83BMCASC

1  new attorney, there is now an attorney.  I don't want to do
2  anything that rushes Mr. Castro into a decision that might be
3  improvident.  But from what has been said here, I take it that
4  Mr. Moran is being discharged.  I haven't literally heard that.
5  And so I'm not sure that that is the case.  What are you
6  saying?
7           MR. BUCHWALD:  I would not recommend that Mr. Moran be
8  discharged yet.
9           THE COURT:  Mr. Moran is not yet discharged, but
10 Mr. Castro has the right to discharge him and there are no
11 particular formalities.  He can write him a note, he can call
12 him.  But if he is discharged, then the U.S. Attorney, the
13 assistant, and I have to know it.  And until he's discharged,
14 he's still the lawyer.  Now, Mr. Castro and his family have a
15 right to continue with Mr. Moran as long as Mr. Moran doesn't
16 obstruct the proceedings and the Court, which he really hasn't
17 been doing.
18          MR. BUCHWALD:  Your Honor, if I might, Mr. Moran, I
19 take it, is a New Jersey attorney, whom I assume is either
20 admitted in New York or has appeared pro hac vice.  I believe
21 until discharge he is totally subject to the authority of the
22 Court and it would seem to me appropriate for the Court to
23 order his appearance 30 days hence in any event, because we
24 just don't know what's about to happen.  Maybe he will be
25 replaced at that point by new counsel or that new counsel will

83BMCASC

1    have appeared even before then or that CJA counsel would be
2    appointed on that date, but in either event, it would seem to
3    me to be appropriate to order his appearance.
4            THE COURT:  I would amend that.  I would say that I am
5    going to issue an order and I'll have Mr. Beale phone that to
6    him, and that is that he appear in this courtroom one week from
7    now.
8            Mr. Beale, what time?
9            THE DEPUTY CLERK:  It will be Thursday, March 20, at
10   4:30.
11           MR. EGAL:  Your Honor, the assistant, myself, I will
12   not be in the office that week, but I can have someone --
13           THE COURT:  All I'm doing is having him come in and I
14   am going to say this, that if he does not come in at that time,
15   unless I hear an objection right now, he is discharged from the
16   case, and I think Mr. Castro is nodding affirmatively.  You
17   agree with that, do you?  Yes.
18           If he communicates with the Court and he says he's got
19   another engagement, obviously, we can handle that, but if he
20   simply doesn't appear and doesn't offer any reasonable
21   adjourned date and I mean reasonably close, he is discharged.
22   Now, if he comes in, we will see what he says.  And then we
23   will see what Mr. Castro wants to do.  And if he wants to
24   discharge Mr. Moran and get another lawyer, he and his mother
25   are free to do that.  They are free to do that at any time.

83BMCASC

1           If Mr. Castro wants to discharge Mr. Moran, regardless
2  of this direction that he comes in next week, Mr. Castro can
3  discharge Mr. Moran at any time.  You understand what I'm
4  saying, don't you?  But the weekday is simply so we don't have
5  things open.  If Mr. Moran is discharged, he will come in and
6  find out he's discharged.  If he isn't, we will take it from
7  there.  We want to set another date, and that is a month from
8  now, to follow up on what happens in the meantime.
9           What's the date a month from now, Mr. Beale?
10          THE DEPUTY CLERK:  April 17.
11          MR. EGAL:  At 4:30?
12          THE DEPUTY CLERK:  4:30, yes.
13          MR. EGAL:  Your Honor, if we do have this meeting next
14 week, as I said, someone from the office will be here on my
15 behalf.
16          THE COURT:  That's fine.  And then the probation
17 people will be here.
18          Mr. Buchwald, thanks a million.
19          MR. BUCHWALD:  Thank you very much, your Honor.
20          THE COURT:  I think that's all we can do today.
21          MR. BUCHWALD:  With the Court's permission I am going
22 to show the presentence report to him so the client can read
23 it.
24                              o0o
25